# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MILACRON LLC, *et al.*,                       :        Case No. 1:13-cv-364
                                              :
      Plaintiffs,                           :        Judge Timothy S. Black
                                              :
vs.                                           :
                                              :
ADVANCED FLUIDS, INC.                         :
                                              :
      Defendant.                            :

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND, THIRD, AND FIFTH CAUSES OF ACTION (Doc. 8)

This civil action is before the Court on Defendant's Motion to Dismiss the Second, Third, and Fifth Causes of Action in Plaintiffs' Complaint (Doc. 8) and the parties' responsive memoranda.   (Docs. 15 and 18).

## I.      BACKGROUND

On May 29, 2013, Plaintiffs Milacron LLC and Cimcool Industrial Products LLC filed a Complaint asserting eight causes of action against Defendant Advanced Fluids, Inc.: (1) misappropriation of trade secrets, (2) deceptive trade practices, (3) tortious interference with business relationships, (4) breach of contract, (5) common law unfair competition, (6) federal trademark infringement, (7) contributory federal trademark infringement, and (8) common law trademark infringement.   (Doc. 1 at ¶ 4).

Plaintiffs allege as "facts common to all causes of action" in the Complaint that a Confidential Disclosure Agreement ("CDA") entered into by Defendant and Starchem Inc., a company that was later purchased by Plaintiffs, is a valid contract that remains in

effect as to Plaintiffs and Defendant. (*Id*. at ¶¶ 10, 20, 21). Plaintiffs further allege that Plaintiffs have both federally registered trademarks and common law trademark rights related to the color pink in connection with certain of its industrial fluid products. (*Id*. at ¶¶ 23-27). Plaintiffs allege that Defendant is working in concert with the Stough Group Inc, d/b/a Stough Tool Sales and StoughCool ("Stough") to distribute products that infringe Plaintiffs' trademarks and that were developed based on trade secret and confidential information that Defendant received pursuant to the CDA. (*Id*. at ¶¶ 30-35). This last allegation is based on Plaintiffs' assertion that "Defendant does not have the resources to develop its own versions of the Unique Formulations nor had a reasonable period of time elapsed between the cessation of work with Plaintiffs and the continued sales of products through Plaintiffs' competitor, Stough, to allow for such development." (*Id.* at ¶ 37)

Defendant asserts that the second, third, and fifth causes of action should be dismissed under Federal Rule of Civil Procedure l2(b)(6) for failure to state claims upon which relief can be granted. (Doc. 8-1 at 2).

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' […] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).   Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Id.* (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'"   *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)).   Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"   *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.   A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"   *Id.* (citing Fed. Rule Civ. Proc. 8(a)(2)).

3

### III.   ANALYSIS

**A.   Deceptive Trade Practices and Unfair Competition (Claims 2 and 5)**

Deceptive trade practices claims pursuant to Ohio Rev. Code § 4165.02 and common law unfair competition claims are analyzed using the same basic test.   *See Stilson & Assocs., Inc. v. Stilson Consulting Grp., LLC*, 129 F. App'x 993, 994 (6th Cir. 2005); *Procter & Gamble Co. v. Georgia-Pacific Consumer Prods. LP*, No. 1:09-cv-318, 2009 U.S. Dist. LEXIS 72052, at *3 (S.D. Ohio Aug. 3, 2009) ("Analysis […] will also address Plaintiff's claims of unfair competition under Ohio's common law and Ohio Rev. Code § 4165.02(A)(2) and (3), the Ohio Deceptive Trade Practices Act statute, because courts apply the same basic test").

To state claims for deceptive trade practices and unfair competition, Plaintiffs must allege that they are owners of a valid trademark, that Defendant is using the mark in commerce, and that Defendant's use of the mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.   *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

**1.   Ownership of a Valid Trademark**

Plaintiffs have specifically pled ownership of the PINK Color Marks by exclusive and continuous usage since the 1940s as well as ownership of valid and subsisting trademark registrations.   (Doc. 1 at ¶¶ 23-28; Doc. 1-3; Doc. 1-4; Doc. 1-5).

4

"Registration of a mark on the Principal Register of the USPTO creates a rebuttable presumption that a trademark is valid, […] and therefore, protectable under federal trademark law." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 513 (6th Cir. 2007); *see also* 15 U.S.C. § 1115(a) (registration on the principal register is *prima facie* evidence of the validity of the mark).   Here, Plaintiffs have not only pled ownership of three separate registrations for the PINK Color Marks, but have further detailed their ownership and use for over 70 years.

Consequently, Plaintiffs have sufficiently alleged ownership of a valid trademark and satisfied the first prong of this analysis at the pleading stage.

### 2.      Use of the Mark in Commerce

Plaintiffs have also unquestionably alleged that Defendant is making use of the PINK Color Marks in commerce.   Plaintiffs clearly allege that "[l]ast year, Plaintiffs learned that Stough was selling industrial fluids including machining fluids, oils, lubricants, and cleaners utilizing Plaintiffs' distinctive pink color, as discussed below, under the brand 'StoughCool' in the United States," that "Plaintiffs have also recently discovered that the StoughCool Pink Products, as well as other Stough products, make use of the Unique Formulations and other trade secret and confidential information," that "Defendant is now working in concert with Plaintiffs' competitor, Stough, to distribute the Stough Products utilizing Plaintiffs' valuable Unique Formulations and other trade secret and confidential information," and that "Defendant is acting as a blender and/or

manufacturer with other third parties as well and is using with these third parties Plaintiffs' valuable Unique Formulations and other trade secret and confidential information." (Doc. 1 at ¶¶ 29, 32, 35-36).

Consequently, Plaintiffs have sufficiently alleged that Defendant has used the PINK Color Mark in commerce and satisfied the second prong of this analysis at the pleading stage.

### 3. Likelihood of Confusion

Finally, Plaintiffs have sufficiently pled that Defendant's use of the PINK Color Marks is likely to cause confusion among consumers. A likelihood of confusion is generally determined by considering eight non-dispositive factors: (1) the strength of the senior mark; (2) relatedness of the goods or services, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) likely degree of purchaser care, (7) the intent of defendant in selecting the mark, and (8) the likelihood of expansion of the product lines. *Daddy's Junky Music*, 109 F.3d at 280 (citing *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982)). "[A] plaintiff need not show that all, or even most, of the factors are present in any particular case to be successful." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988).

First, Plaintiffs' Complaint sets forth the alleged strength of Plaintiffs' PINK Color Marks. It alleges that Plaintiffs are the owners of three separate trademark registrations,

which again consitute *prima facie* evidence of the validity of the PINK Color Marks and of Plaintiffs' exclusive right to use them in commerce.   (Doc. 1 at ¶¶ 27; Doc. 1-3; Doc. 1-4; Doc. 1-5).   Further, Plaintiffs allege that the PINK Color Marks have been continuously and exclusively used in commerce by Plaintiffs and their predecessors in interest since the 1940s.   (Doc. 1 at ¶ 28).

Plaintiffs' Complaint also clearly sets forth the alleged substantial similarity between the fluids being blended and/or manufactured by Defendant for Stough and Plaintiffs' products.   Plaintiffs specifically allege that "[l]ast year, [they] learned that Stough was selling industrial fluids including machining fluids, oils, lubricants, and cleaners *utilizing Plaintiffs' distinctive pink color*" (emphasis added).   (Doc. 1 at ¶¶ 29-32).   To substantiate these allegations, Plaintiffs attached photos to show the similarity in color between the product blended and/or manufactured by Defendant and Plaintiffs' product.   (Doc. 1-6; Doc. 1-7; Doc. 1-8).

Next, Plaintiffs have alleged that Defendant is operating in direct competition with Plaintiffs.   (Doc. 1 at ¶¶ 29-25).   Specifically, Plaintiffs allege that Defendant is "working in concert with Plaintiffs' competitor, Stough, to distribute the Stough products" that are allegedly illegally using Plaintiffs' PINK Color Marks.   (*Id.*)   This allegation goes not only to the relatedness of the goods themselves, but the marketing channels at issue as well.   *Daddy's Junky Music*, 109 F.3d at 280.

Finally, Plaintiffs' Complaint establishes Defendant's intent in selecting the mark. Plaintiffs allege Defendant acted as a blender for Starchem, an entity later purchased by Plaintiffs.  (Doc. 1 at ¶¶ 9-19).  The Complaint adds that pursuant to a CDA dated April 19, 2003, Starchem shared its unique formulations for metalworking and other industrial fluids with Defendant.  (Doc. 1 at ¶¶ 10, 16).  Further, Plaintiffs allege that they have uncovered that the StoughCool Pink Products, as well as other Stough products, make use of the unique formulations and other trade secret and confidential information provided by Starchem to Defendant.  (Doc. 1 at ¶ 32).  As set forth in the Complaint, although Defendant allegedly knows it has a duty to maintain the secrecy of the unique formulations, it nonetheless is "manufacturing, blending, marketing, selling and distributing the StoughCool Pink Products through Stough for the purpose of trading on Plaintiffs' goodwill in the PINK Color Marks and Plaintiffs' business reputation, [and] with the intention of creating consumer confusion over the source and origin of the StoughCool Pink Products."  (Doc. 1 at ¶¶ 69, 71).  Although the latter allegation appears in Plaintiffs' claim for federal trademark infringement under the Lanham Act, this claim is also analyzed using the same test that applies to Plaintiffs' unfair competition and deceptive trade practices claims.  *See Stilson & Assocs.*, 129 F. App'x at 994; *Georgia-Pacific Consumer Prods. LP*, 2009 U.S. Dist. LEXIS 72052 at *3.

As with the two prior factors in the analysis, Plaintiffs have alleged facts sufficient to support a reasonable inference that Defendant's use of the PINK Color Marks is likely to cause confusion among consumers.  As a result, Plaintiffs have sufficiently pled their

8

unfair competition and deceptive trade practices claims.

**B.      Tortious Interference with Trade Relationships (Claim 3)**

Tortious interference with business relationships occurs "when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *Golio v. Adena Heath Sys.*, No. 2:11-cv-00757-MRA, 2012 U.S. Dist. LEXIS 56250, at *16 (S.D. Ohio Apr. 23, 2012) (quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 73 Ohio St. 3d 1, 14 (Ohio 1995)).   The elements of the claim are: (1) the existence of a business relationship; (2) the wrongdoer's knowledge thereof; (3) the wrongdoer's intentional procurement of a breach of the business relationship; (4) lack of justification; and (5) resulting damages.   *Id.*

Plaintiffs allege that

Defendant has interfered with Plaintiffs' business relationships, without a legal justification for doing so, by encouraging customers, representatives and/or suppliers not to continue to do business with Plaintiffs, or to do less business with Plaintiffs, by encouraging them to do business with Defendant rather than Plaintiffs.

(Doc. 1 at ¶ 54).   Much like in *Golio*, "[t]he complaint gives little more than a formulaic recitation of the elements of a cause of action."   2012 U.S. Dist. LEXIS 56250 at *16. Despite this bare and partial recitation of a tortious interference claim, Plaintiffs do not support this allegation by pleading any facts regarding any specific conduct on the part of Defendant or provide any factual basis whatsoever to support their assertion that

9

Defendant's accused actions actually resulted in a breach of a business relationship.

Plaintiffs also fail to identify any particular party with which Defendant allegedly interfered. Plaintiffs merely make conclusory allegations that Defendant interfered with their customers, representatives, and/or suppliers, without stating that they lost business from any particular customer, representative, or supplier. These allegations do not raise Plaintiffs' right to relief above a speculative level, and thus they fail to sufficiently allege facts that satisfy the elements of a claim for tortious interference. *See Dish Network, LLC v. Fun Dish, Inc.*, No. 1:08 CV 1540, 2010 U.S. Dist. LEXIS 133265, at *14 (N.D. Ohio Dec. 16, 2010) (adopting Magistrate Judge's recommendation, *Dish Network, LLC v. Fun Dish, Inc.*, No. 1:08 CV 1540, 2010 U.S. Dist. LEXIS 137926, at *40-41 (N.D. Ohio July 30, 2010).

Plaintiffs never allege that any third parties have ever actually contracted with Defendant rather than license Plaintiffs' unique formulations and PINK Color Marks, and consequently this claim has not been sufficiently pled.

Finally, Plaintiffs' claim for tortious interference is also appropriately dismissed because it is barred by Plaintiffs' cause of action for breach of contract. The Supreme Court of Ohio has established:

> Though a breach of a duty under a contract or lease necessarily interferes
> with the injured party's business relations with third parties, the injured party
> is limited to an action for breach of contract and may not recover in tort for
> business interference. An exception exists, and a tort action may lie, only
> where the breaching party indicates, by his breach, a motive to interfere with
> the adverse party's business relations rather than an interference with

10

business resulting as a mere consequence of such breach.

*Digital & Analog Design Corp. v. N. Supply Co.*, 44 Ohio St. 3d 36, 46 (Ohio 1989) (internal citations omitted); *see also Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 656 F Supp. 49, 63 (S.D. Ohio 1986) ("[W]here an action rises out of a contract, and is also based on tortious conduct, actual damages attributable to the wrongful acts of the alleged tort-feasor must be shown in addition to those damages attributable solely to the breach of the contract") (internal citation and quotation marks omitted).

Plaintiffs have not pled that Defendant was motivated to interfere with Plaintiffs' business relationships with third persons.  Plaintiffs' Complaint is completely devoid of any allegation that Defendant was motivated by a specific desire to interfere with Plaintiffs' business relations rather than merely by a desire to increase Defendant's own business.  (Doc. 1 at ¶ 54).  As a result, Plaintiffs' claim for tortious interference with business relationships is also properly dismissed as it is barred by Plaintiffs' claim for breach of contract.

## IV.    CONCLUSION

Accordingly, based on the foregoing, Defendant's Motion to Dismiss the Second,

Third, and Fifth Causes of Action in Plaintiffs' Complaint (Doc. 8) is hereby **GRANTED**

**IN PART AND DENIED IN PART**.   Specifically:

1.    Defendant's Motion to Dismiss the Second and Fifth Causes of Action
(deceptive trade practices and unfair competition) is **DENIED**; and

2.    Defendant's Motion to Dismiss the Third Cause of Action (tortious
interference with business relationships) is **GRANTED**.

**IT IS SO ORDERED.**

Date:   10/21/13                                             ___*s/ Timothy S. Black* __ _
                                                             Timothy S. Black
                                                             United States District Judge

12